**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **V.** | **NO. 25-25** |
| **LARRY CASTON** | **SECTION: C (2)** |

**ORDER AND REASONS**

Before the court is the Motion for a Judgment of Acquittal of All Counts of the Superseding Indictment or Alternative Motion for a New Trial and the Motion to Dismiss Count 1 of the Superseding Indictment filed by defendant, Larry Caston. R. Docs. 136, 146. He claims insufficient evidence to sustain the jury's guilty verdict and alternatively requests a new trial based on fairness and the integrity of the proceedings. He also claims lack of subject matter jurisdiction over Count 1 of the superseding indictment. The motions were addressed at the sentencing hearing on November 17, 2026. The rulings are supplemented here. The motions are **DENIED**.

## I. PROCEDURAL HISTORY

Larry Caston and Cora Aulder were indicted on January 31, 2025.[1] Caston was charged with possession with intent to distribute 500 or more grams of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count 1), possession of a firearm in furtherance of a drug trafficking crime in violation 18 U.S.C. § 924(c)(1)(A)(i) (Count 2), and felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 3).[2] Aulder was charged with obstruction of justice in violation 18 U.S.C. 1512(c)(1) (Count 4) and possession with intent to distribute cocaine in violation of § 841(a)(1) and (b)(1)(C) (Count 5).[3]

[1] R. Doc. 1.
[2] *Id.* at 1-2.
[3] R. Doc. at 3.

Aulder pled guilty to Counts 4 and 5.[4] A grand jury returned a superseding indictment against Caston the next day, deleting the counts against Aulder.[5]

Caston's jury trial was held from August 17 to 20, 2026.[6] At the close of the government's case, he moved for acquittal under Rule 29 of the Federal Rules of Criminal Procedure.[7] The motion was deferred to the close of the case, then denied.[8] The jury convicted Caston on all the three counts.[9]

## II. THE EVIDENCE

Caston and Aulder resided in adjacent rental apartments at 808 and 806 Whitney Avenue in New Orleans.[10] Their intimate relationship began in 2023.[11] She visited Caston and slept in his apartment almost daily.[12] Caston was a felon and aware of it.[13] Yet, Aulder testified he told her he sells drugs, packaged cocaine for sale in front of her, frequently took her with him to make his sales, and gave her cocaine to sell on his behalf.[14] She also saw him with two firearms, including a 9 millimeter pistol, and heard him say he has four to five others.[15]

Aulder testified that, on October 1, 2024, Caston left around 12:00 to 1:00 p.m. to visit his girlfriend, Latasha Young.[16] Aulder left when he left, and Caston locked his apartment.[17] Sergeant Scheuermann of St. Bernard Parish Sherriff's narcotics unit observed Caston enter and leave

---

[4] R. Doc. 107; *see* R. Docs. 108 (plea agreement), 109 (factual basis).
[5] R. Doc. 113. *Compare id.*, *with* R. Doc. 1.
[6] R. Docs. 125, 127, 128, 129.
[7] Trial Tr. Day 3 at 207:15-208:6.
[8] *Id.* at 212:3-8; Trial Tr. Day 4 at 76:20-22.
[9] R. Doc. 130.
[10] Trial Tr. Day 2 at 29:7-16, 130:5-16.
[11] *Id.* at 131:19-24.
[12] *Id.* at 132:6-10, 133:15-25.
[13] R. Doc. 104 at 1.
[14] Trial Tr. Day 2 at 134:4 -135:20, 138:23-140:10; *see also* R. Doc. 109 at 2 (Aulder's factual basis)
[15] Trial Tr. Day 2 at 135:25-136:11.
[16] *Id.* at 94:9:10-16, 133:4-12, 141:2-142:4.
[17] Trial Tr. Day 2 at 142:5-9.

Young's house.[18] Sgt. Scheuermann stopped Caston for speeding.[19] During the stop Sgt. Scheuermann and other law enforcement found cocaine in Caston's vehicle.[20] Caston was arrested, booked with possession with intent to distribute cocaine, and incarcerated at the St. Bernard Parish jail.[21] He later pled guilty to the state charges.[22]

Aulder testified she received a call from a woman notifying her of Caston's incarceration and telling her to "clean house."[23] She waited until around 8:00 or 9:00 p.m. then retrieved a black bag near his nightstand in his bedroom.[24] She recognized the bag because Caston usually kept money in it.[25] Aulder testified Caston's landlord let her in the apartment.[26] Aulder put nothing in the bag and took it to her apartment.[27] She did not look at its contents.[28] That bag contained the firearms that substantiate Counts 2 and 3, along with ammunition, 449.5 grams of cocaine, digital scales, other drug paraphernalia, and approximately $35,000 in cash.[29]

Caston's mother came to Aulder's apartment to get bond money.[30] She testified the mother came on October 1, 2024,[31] but in interviews said it was October 2, 2024.[32] Aulder opened the bag for the first time and took cash from the top of its contents.[33] After the mother left, Aulder opened the bag and found more cash, cocaine, firearms, and drug paraphernalia.[34] Because the

[18] Trial Tr. Day 1 at 176:10-178:11.
[19] Trial Tr. Day 2 at 44:8-45:11.
[20] *Id.* at 20:21-24:20; *see* Gov. Exs. 11.1, 11.2, 27 (body cam footage of stop and search), 12, 13 (cocaine).
[21] *Id.* at 24:21-25:5; Trial Tr. Day 3 at 75:19-23; Gov. Ex. 37 (Sgt. Scheuermann's probable cause statement).
[22] Trial Tr. Day 2 at 33:15-34:18, 97:12-16; Gov. Ex. 14.
[23] Trial Tr. Day 2 at 142:15-19.
[24] *Id.* at 143:24-144:16, 167:4-8.
[25] *Id.* at 144:15-19.
[26] *Id.* at 143:7-20, 167:10-24, 206:9-10.
[27] *Id.* at 145:1-5, 12-16.
[28] *Id.* at 145:9-11; Defendant's Ex. 4.2 at 5:30-43.
[29] *See* Trial Tr. Day 2 at 144:7-8, 147:16-22, 151:24-152:22, 156:8-11, 157:1-13; Trial Tr. Day 3 at 11-20, 156:16-157:1; R. Docs. 109 at 2, 113 at 2; Gov. Exs. 1-10, 16-19, 21, 28-8, 30, 31, 34.1, 34. 2, 36; Defendant's Ex. 4.1.
[30] Trial Tr. Day 2 at 145:17-146:7.
[31] *Id.* at 206:11-14.
[32] Gov. Ex. 35.2 at 0:44-0.47; Defendant's Ex. 4.2 at 0:49-59.
[33] Trial Tr. Day 2 at 147:4-9; Defendant's Ex. 4.2 at 06:10-40.
[34] Trial Tr. Day 2 at 147:16-22, 152:11-22, 194:14-15.

bag ripped, Aulder put the items in other bags and boxes and concealed them in different areas of the front room of her apartment.[35]

Caston made multiple recorded calls from jail.[36] He called Aulder on October 2, 2026, around 10:00 a.m.[37] She told him she "got the money and everything. . . . I got your bond money"; he asked where she got the money and everything, and she answered, "from where else?".[38] Caston asked if the landlord opened the door, she answered yes, and then, unprompted, he asked if the money was "in the bag . . . where all that stuff at."[39] Aulder responded "from where else?" referring to Caston's apartment.[40] She believed he understood the rhetorical question.[41] Considering the call and the cocaine seized from Caston, Sgt. Scheuermann testified he understood "and everything" referred to contraband.[42] He identified Aulder, located her and Caston's apartments, and relayed the information and a probable cause statement to the New Orleans Police Department.[43] Officer Dylan Suarez of the New Orleans Police Department listened to the call and authored and obtained search warrants for the two apartments.[44]

The apartments were searched on October 3, 2024.[45] Aulder's was searched first, and the firearms,[46] ammunition,[47] 449.5 grams of cocaine,[48] three digital scales,[49] and cash were all

---

[35] *Id.* at 152:5-10, 194:25-195:1, 13-16; Gov. Ex. 29.2 at 0:57-2:10.
[36] Trial Tr. Day 2 at 25:3-16 (explaining law enforcement's access to police calls), 32:15-19; *see* Gov. Exs. 15, 24, 25, 26.
[37] *See* Trial Tr. Day 2 at 28:23-29:11, 148:17-149:2, 206:20-23; Trial Tr. Day 3 at 100:12-24; Gov. Ex. 15.
[38] Gov. Ex. 15 at 0:56-1:39.
[39] *Id.* at 1:40-2:15.
[40] Trial Tr. Day 2 at 149:3-14.
[41] *Id.* at 149:15-17.
[42] *Id.* at 92:14-18.
[43] *Id.* at 29:2-23, 56:11-13; Trial Tr. Day 3 at 5:2-21; Gov. Ex. 37.
[44] Trial Tr. Day 3 at 5:8-23.
[45] *See id.* at 5:24-6:9; Gov. Ex. 28.1 (October 3, 2024, body camera footage displaying search of Aulder's apartment); Defendant's Ex. 3 at 1:01:40-04:45 (October 3, 2024, body camera footage displaying search of Caston's apartment).
[46] Trial Tr. Day 3 at 12:10-12, 14:16-23, 18:17-20:18, 80:19-22; *see* Gov. Exs. 1, 2, 3, 4, 30, 31.
[47] Trial Tr. Day 3 at 12:18-20, 15:3-6, 16:24-17:2; *see* Gov. Exs. 5, 6, 7, 8, 9, 10, 31.
[48] Trial Tr. Day 2 at 104:24-17, 117:21-19,120:16-121:5; Trial Tr. Day 3 at 15:17-17:2; *see* Gov. Exs. 16, 18, 19.
[49] Trial Tr. Day 3 at 16:16-17:2; Gov. Ex. 21.

recovered from her front room.[50] During that search, Aulder told police the cocaine, cash, and firearms were in a black bag she retrieved from Caston's apartment.[51] They then searched Caston's apartment and recovered 2008.1 grams of cocaine from a plastic bag inside an open container[52] and mail addressed to him at 808 Whitney Avenue.[53]

Caston also called Young from jail.[54] He said he had to "go lay down" because his apartment was "not clean" and then referred to "two wholes," "money," and "gun" in quick succession.[55] Sgt. Scheuermann interpreted Caston to say he had to do jail time because his apartment contained contraband, including two kilograms ("wholes") of cocaine.[56]

## III. LEGAL STANDARD

### A. Rule 12(b)(2)

Subject matter jurisdiction involves the court's "statutory or constitutional power to adjudicate the case," and it "can never be waived or forfeited." *United States v. Kaluza*, 780 F.3d 647, 653 (5th Cir. 2015) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)). Accordingly, Rule 12(b)(2) provides "[a] motion that the court lacks jurisdiction may be made at any time while the case is pending."

Title 18 U.S.C. § 3231 grants "original jurisdiction . . . of all offenses against the laws of the United States" to the district courts. To determine subject matter jurisdiction, the court's inquiry is limited to the "face of the charging document." *United States v. Scruggs*, 714 F.3d 258, 262 n.13 (5th Cir. 2013). An indictment "need only charge a defendant with an offense against the United States in language similar to that used in the relevant statute" to confer subject matter

[50] Trial Tr. Day 3 at 20:19-21:2, 156:15-157:9.
[51] Gov. Exs. 29.2 at 00:40-01:58, 35.2 at 00:34-43.
[52] Trial Tr. Day 2 at 122:6-123:16; Trial Tr. Day 3 at 22:13-24:15; Gov. Exs. 28.5 at 0:27-30, 28.6 at 0:07-13.
[53] Trial Tr. Day 3 at 24-25:13; Gov. Ex. 22.
[54] Trial Tr. Day 2 at 93:11-94:14; Gov. Ex. 24 at 01:20-03:04, 04:49-59.
[55] Gov. Ex. 24 at 4:19-40.
[56] Trial Tr. Day 2 at 30:14-31:8, 93:11-21.

jurisdiction on the court. *Id.* at 262. "That is the extent of the jurisdictional analysis." *Id.* An indictment's defects, such as insufficient factual allegations, do not deprive the court of jurisdiction. *United States v. Isgar*, 739 F.3d 829, 838 (5th Cir. 2014).

**B. Rule 29**

A motion for judgment of acquittal under Rule 29 "challenges the sufficiency of the evidence to convict." *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) (quoting *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005)); *see* FED. R. CRIM. P. 29(a). When the evidence is insufficient to sustain a conviction on a count, the court must enter a judgment of acquittal. FED. R. CRIM. P. 29(a). Rule 29(c) allows a defendant to move for judgment of acquittal, or renew same, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. If the jury returns a guilty verdict, the court can set it aside and enter an acquittal by granting the motion. *Id.* at 29(c)(2).

The standard for resolving a Rule 29 motion is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Lopez-Urbina*, 434 F.3d 750, 757 (5th Cir. 2005) (applying *Jackson*). That is the inquiry whether the evidence is direct or circumstantial. *United States v. Thomas*, 627 F.3d 146, 151 (5th Cir. 2010).

Evidence is sufficient to support a jury verdict if a rational factfinder could have found the elements of the crime beyond a reasonable doubt. *United States v. Hill*, 63 F.4th 335, 361 (5th Cir. 2023). Review is "highly deferential" to the jury. *Id.* The court cannot reweigh the evidence or substitute credibility choices that support the verdict. *Id.* The jury weighs evidence and makes credibility choices. *See United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The court then

views all evidence, reasonable inferences, and credibility choices in the light most favorable to that verdict. *Hill*, 63 F.4th at 361.

**C. Rule 33**

Within 14 days after a guilty verdict, on a basis other than newly discovered evidence, a defendant can move for a new trial under Rule 33. The court can vacate the judgment and grant the motion "if the interest of justice" requires. FED. R. CRIM. P. 33(a), (b)(2). The motion should not be granted unless "there would be a miscarriage of justice or the weight of the evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004) (citing *United States v. O'Keefe*, 128 F.3d 885, 898 (5th Cir. 1997)). "A new trial is granted only upon demonstration of adverse effects on substantial rights of a defendant." *Id.* (citing *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997)). The defendant bears the burden of showing a new trial is warranted. *United States v. Johnson*, 713 F. Supp. 2d 595, 607 (E.D. La. 2010).

## IV. DISCUSSION

Caston claims insufficient evidence to establish his possession of the cocaine and firearms found in his and Aulder's apartments,[57] as required by section 841(a)(1) and (b)(1)(B)(ii), section 922(g)(1), and section 924(c)(1)(A). *See United States v. Daniels*, 723 F.3d 562, 576 (5th Cir. 2013) (regarding section 841(a)(1) and (b)(1)(B)(ii)); *United States v. Suarez*, 879 F.3d 626, 632 (5th Cir. 2018) (regarding section 924(c)(1)(A)); *United States v. Meza*, 701 F.3d 411, 418-19 (5th Cir. 2012) (regarding section 922(g)(1))). He denies joint occupancy of either apartment with Aulder.[58] He asserts he cannot be held criminally liable for possessing the same firearms and quantity of cocaine she possessed.[59] He also claims insufficient evidence to support the "in

[57] *See* R. Doc. 136 at 5, 7-12, 14-18.
[58] *Id.* 9-10, 17, 20.
[59] *Id.* at 8, 17-18.

furtherance of" element of section 924(c)(1)(A),[60] and appears to make the same claim as to the "intent to distribute" element of section 841(a)(1).[61] Alternatively, Caston requests a new trial "in the interest of fairness and the integrity of judicial proceedings" because of the "several discrepancies transpiring in the initial proceeding."[62]

Separately, Caston challenges the court's subject matter jurisdiction over Count 1.[63] He claims Count 4 of the original indictment against Aulder is the "jurisdictional hook" for Count 1 against him.[64] He argues Count 1 is based on the aggregate 2,457.6 grams of cocaine recovered from both apartments.[65] Yet, he continues, Aulder has admitted to possessing 449.5 grams by pleading guilty to Count 5, and despite her guilty plea as to Count 4, there is no evidence of her knowledge of, or obstruction of, the 2008.1 grams found in his apartment.[66] Caston claims these circumstances raise "factual inconsistencies" because Aulder could not obstruct the aggregate amount of cocaine, and those inconsistencies deprive the court of subject matter jurisdiction.[67]

The government contends Caston's motion for judgment of acquittal is a veiled request for the court to reassess the jury's credibility choices and reweigh the evidence.[68] It asserts actual possession is not required and possession can be joint.[69] The government also contends the interests of justice do not warrant a new trial.[70]

---

[60] *Id.* at 9-10, 13.
[61] *Id.* at 8.
[62] *Id.* at 2, 20-21.
[63] R. Doc. 146.
[64] *Id.* at 3, 6.
[65] *Id.* at 2.
[66] *Id.* at 2, 4-5, 8.
[67] *Id.* at 2-3, 5, 8-9.
[68] R. Doc. 140 at 1.
[69] *Id.* at 4-5.
[70] *Id.* at 1 n.1.

First, the request for new trial is meritless and denied. Caston provides no specific ground under Rules 33(a) and (b)(2) to support the request, and the interests of justice do not require a new trial.

Second, the motion to dismiss Count 1 for lack of subject matter jurisdiction is also denied. Caston's arguments are irrelevant to a jurisdictional analysis. They do not pertain to the face of the superseding indictment. Count 1 "track[s]" the language of the applicable statute, section 841(a)(1) and (b)(1)(B). The court has subject matter jurisdiction. *Isgar*, 739 F.3d at 838 (holding court possessed subject matter jurisdiction because the indictment's counts tracked the language of the corresponding statutes).

**A. Possession**

Possession of contraband can be actual or constructive. *United States v. McKnight*, 953 F.2d 898, 901 (5th Cir. 1992). Actual possession is "knowingly having direct physical control over a thing," *United States v. Campos-Ayala*, 105 F.4th 235, 240 (5th Cir. 2024) (en banc) (quoting *Meza*, 701 F.3d at 419). Constructive possession is "(1) ownership, dominion or control over the item itself or (2) dominion or control over the premises in which the item is found." *Meza*, 701 F.3d at 419. Constructive possession can be joint with others and can be proven by circumstantial evidence. *McKnight*, 953 F.2d at 901. The court employs a "common sense, fact-specific approach" to determine constructive possession. *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994).

Two kilograms of cocaine were found in Caston's apartment. Caston had constructive possession of that cocaine because he had dominion and control over his apartment. Both Sgt. Scheuermann and Aulder identified 808 Whitney Avenue as Caston's apartment.[71] He paid rent to

[71] Trial Tr. Day 2 at 29:15-16, 130:5-131:1.

reside there and had keys to it.[72] *See United States v. Arnold*, 467 F.3d 880, 883 (5th Cir. 2006) (finding dominion and control of house based on, among other things, payment of rent); *United States v. Pineda-Pineda*, 534 F. App'x 272, 275 (5th Cir. 2013) (finding dominion and control over residence based on key access). The mail addressed to Caston at 808 Whitney Avenue is further evidence of dominion and control of the apartment. *Meza*, 701 F.3d at 419-20 (finding dominion or control based on mail addressed to defendant).

Caston argues there is no evidence to support his possession of the contraband found in Aulder's apartment. But his argument is anchored in "actual," not "constructive," possession. Constructive possession can be established by evidence of ownership of the contraband, and he and Aulder can possess contraband at the same time.

The evidence and reasonable inferences drawn therefrom sufficiently establish Caston owned the firearms and cocaine in Aulder's apartment beyond reasonable doubt. That contraband came in a black bag from Caston's apartment. Aulder did not look in nor add to the bag's contents when she took it. Reasonably inferred, the bag is Caston's. Aulder has seen him storing money in it multiple times, it was found near his nightstand in his bedroom, and he recognized the bag when discussing it in the jail call with Aulder. Caston exclusively sold cocaine, claimed to have four to five guns, and actually possessed two guns, including a 9-millimeter pistol, in front of Aulder.

A rational jury could find Caston constructively possessed the cocaine found in his apartment and the cocaine and firearms found in Aulder's.

**B. Intent to Distribute**

To convict a defendant of possession with intent to distribute cocaine in violation of section 841, the government must prove the defendant intended to distribute cocaine he knowingly

[72] *See* Defendant's Ex. 4.2 at 4:00-5:05; Trial Tr. Day 2 at 142:8-9.

possessed. *Daniels*, 723 F.3d at 576. Intent to distribute can be inferred solely from the amount of controlled substance possessed. *United States v. Hunt*, 129 F.3d 739, 742 (5th Cir. 1997); *Campos-Ayala*, 105 F.4th at 244. For a quantity that does not meet the statutory threshold, other evidence can be distribution paraphernalia, large quantities of cash, or the value and quality of the substance. *United States v. Munoz*, 957 F.2d 171, 174 (5th Cir. 1992).

The 2,457.5 grams of cocaine the jury found Caston knowingly possessed is enough to infer the intent to distribute. *See United States v. Kates*, 174 F.3d 580, 583 (5th Cir. 1999) (19.67 grams of crack sufficient to infer intent to distribute); *United States v. Flirt*, No. 22-40107, 2023 WL 4174057, at *3 (5th Cir. June 26, 2023) (30 grams of methamphetamine sufficient). The three digital scales and approximately $35,000 found with the cocaine in Aulder's apartment also support the inference of intent to distribute. *See United States v. Williamson*, 533 F.3d 269, 278 (5th Cir. 2008) (2 digital scales found with cocaine supported intent to distribute); *United States v. Youngblood*, 576 F. App'x 403, 407 (5th Cir. 2014) (digital scale and more than $19,000 supported intent to distribute). A rational jury could find Caston had the intent to distribute the cocaine he possessed.

**C. In Furtherance**

To convict a defendant of possessing a firearm "in furtherance of" a drug trafficking crime in violation of section 924(c)(1)(A), the government must prove possession of a firearm that "furthered, advanced, or helped forward" the drug trafficking offense. *Suarez*, 879 F.3d at 632 (citation modified) (quoting *United States v. Walker*, 828 F.3d 352, 354 (5th Cir. 2016)). Relevant factors to determine whether possession is "in furtherance of" of a drug trafficking crime are: (1) the type of drug activity; (2) accessibility of the firearm; (3) the type of firearm; (4) whether the firearm is stolen; (5) the legality of the possession; (6) whether the gun is loaded; (7) the proximity

of the weapon to the drugs; and (8) the time and circumstances when the firearm is found. *Id.*; *United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000). The factors are non-exclusive, and there need not be evidence of all the factors. *See Walker*, 828 F.3d at 355.

Where multiple firearms are found in a defendant's possession, a jury need only find one possessed in furtherance of a drug trafficking crime to support a conviction under section 924(c)(1)(A)(i). *See United States v. Phipps*, 319 F.3d 177, 186 (5th Cir. 2003) ("[T]he unit of prosecution for § 924(c)(1) is the . . . possession of *a* firearm during and in relation to a predicate offense." (emphasis added). Here, applying the *Ceballos-Torres* factors to the Springfield XD .40 caliber pistol bearing serial number US266430 is sufficient.[73]

The Springfield pistol is a handgun. A handgun is typically used in drug trafficking. *See United States v. Zamora*, 661 F.3d 200, 211 (5th Cir. 2011). The police found the loaded pistol in a plastic bag.[74] It was found in the same room as a large amount cocaine, cash, and digital scales. *See Suarez*, 879 F.3d at 633 (A pistol found in same room as drugs was sufficient to establish "in furtherance of"); *United States v. Charles*, 469 F.3d 402, 406-07 (5th Cir. 2006) (pistol found in "close proximity to over 400 grams of crack cocaine and a large amount of currency" was sufficient to establish "in furtherance of"). Caston possessed the cocaine for distribution, as evidenced by the quantity, cash, and paraphernalia.[75] Caston's possession of the pistol was illegal because he is a felon. *See United States v. Holley*, 831 F.3d 322, 330 (5th Cir. 2016). There is sufficient evidence for a rational jury to find Caston possessed a firearm in furtherance of Count 1. *See, e.g.*, *Charles*, 469 F.3d at 406-07 (jury-trial conviction for possession of firearm in furtherance of drug-trafficking offense based on some, but not all, of the factors).

[73] *See* Gov. ex. 1.
[74] Trial Tr. Day 3 at 12:10-20, 14:18-21.
[75] *See* Trial Tr. Day 3 at 16:18-20 (testimony of officer that executed search warrants indicating digital scales are consistent with distribution of narcotics).

## V. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the motions are **DENIED**.

New Orleans, Louisiana, this 18th day of November 2026.

WILLIAM J. CRAIN
UNITED STATES DISTRICT JUDGE